# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WENDY MEDINA, <br><br> Plaintiff, <br><br> v. <br><br> KEVORKIAN CLEANING COMPANY, INC., *et al.*, <br><br> Defendants. | Civil Action No. 18-1291 (JEB) |

## MEMORANDUM OPINION

Like many others, this case substantially turns on the distinction between an employee and an independent contractor. Plaintiff Wendy Medina worked for Defendants Kevorkian Cleaning Company, Inc. and Chris Kevorkian — the Company's President and Secretary — during two separate stints in 2015 and 2016. She alleges in this suit that throughout these two periods, the Company paid her at below the minimum wage and denied her overtime pay in violation of the federal Fair Labor Standards Act, the D.C. Minimum Wage Revision Act, and the D.C. Wage Payment and Collection Law.

Defendants now move for summary judgment on all claims arguing, in part, that Medina did not qualify for the salaries guaranteed by the Acts because she worked as an independent contractor. Plaintiff opposes that Motion and cross-moves for partial summary judgment herself. Both sides, however, have offered conflicting evidence on a variety of crucial factual issues, and the Court is not permitted to weigh this evidence and perform a credibility assessment at the summary-judgment stage. It will therefore almost entirely deny the Motions, but it will enter

1

judgment in favor of Defendants on part of Plaintiff's FLSA claim, which is barred by the applicable statute of limitations.

I. **Background**

Given its foreshadowed ruling, the Court sets out the facts in the light most favorable to Plaintiff as to the one statute-of-limitations issue, but otherwise notes the disputes. See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). The Company provides janitorial and cleaning services to restaurants, office buildings, and other commercial properties in Maryland and the District of Columbia. See ECF No. 26 (Def. MSJ), Exh. 1 (Def. Statement of Material Facts), ¶ 1. To carry out these services, it relies on a mix of employees and independent contractors. Id., ¶¶ 6–7. This case may well ultimately hinge on whether Plaintiff should be considered the former or the latter. If she were Defendants' employee, they could be liable to her for the wages and overtime pay guaranteed by federal and state labor laws; conversely, they would not owe such sums to an independent contractor.

Plaintiff worked intermittently for the Company as a cleaner for a little over a year. Her "first stint," which lasted around two months, began in early 2015 when she was hired by Company employee Elias Ramirez to clean the dining rooms of the D.C. restaurants Oceanaire and Georgia Brown's. Id., ¶ 10; see also ECF No. 27 (Pl. MSJ), Exh. 6 (Deposition of Wendy Medina) at 7:15–21 (recounting that she started working for Elias at some time in 2015 but that she could not remember the exact month). The parties agree that this period of employment ended prior to May 31, 2015. Id. at 12:14–17.

At some point, although the sides have offered competing evidence as to when Eduardo Negrette (who Defendants claim is their independent contractor) hired Medina for a "second stint" with the Company. During this period, which lasted at a minimum from spring 2016

2

through July of that year, Medina cleaned a number of restaurants including Capital Grille, D.C. and Commissary. See Def. SMF, ¶¶ 26–28; see also Def. MSJ, Exh. 7 (Affidavit of Eduardo Negrette), ¶ 21 (stating that he hired Plaintiff around March 2016). The parties disagree — and have offered inconsistent accounts — as to whether Medina also worked for the Company during some or all of the interim period between May 31, 2015, and the spring of 2016. See Pl. SMF, ¶ 23 ("At some point following the first stint, Plaintiff returned to perform work for the benefit [of] Defendants . . . . At the latest, Defendants were aware that Plaintiff was performing work for their benefit as of March 2016."); Medina Depo. at 20:11–17 (stating tentative belief that Negrette hired her in July 2015); Def. SMF, ¶ 38 ("In or about April 2016, Defendants discovered that Mr. Negrette had hired Plaintiff to assist him with his cleaning responsibilities.").

On May 31, 2018, Plaintiff filed a Complaint against Defendants asserting three counts under the FLSA, 29 U.S.C. § 206(a)(1), DCMWRA, D.C. Code §§ 32-1001, *et seq.*, and DCWPCL, D.C. Code § 32-1301, respectively. See Compl., ¶¶ 63–83. Medina alleges that she was an employee during her time with Defendants but was not compensated in accordance with these federal and local laws. Despite the relatively small monetary gap separating their positions, the parties' efforts at mediation went nowhere. They proceeded through discovery and have now filed the present Cross-Motions for Summary Judgment.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).

### III.  Analysis

"The Fair Labor Standards Act guarantees all 'employees' a federal minimum wage" and overtime pay. Rhea Lana, Inc. v. United States, 925 F.3d 521, 522–23 (D.C. Cir. 2019) (quoting 29 U.S.C. § 206(a)). Similarly, the DCWPCL requires every "employer" to "pay all wages earned to his employees at least twice during each calendar month," D.C. Code § 32-1302, and the DCMWRA sets the minimum wage "to be paid to any employee by any employer in the District of Columbia" while also providing for overtime pay. See D.C. Code § 32-1003(a), (c). "An employee may not recover for nonpayment of wages separately under the FLSA, the DCMWRA, and the DCWPCA since that would result in a double (or triple) recovery for unpaid wages." Perez v. C.R. Calderon Constr., Inc., 221 F. Supp. 3d 115, 139 (D.D.C. 2016).

Defendants argue that Plaintiff's claims brought under these statutes should be rejected for several reasons. First, they assert that Medina's counts as they relate to her initial stint with

4

the Company are precluded by the relevant statutes of limitations. Second, they posit that all of her claims fail as a matter of law because she worked as an independent contractor, rather than an employee. Third, they argue that, in any event, they did pay Medina at a minimum-wage rate, but that she has overstated the number of hours that she worked. Plaintiff counters that the statutes of limitations should be tolled; that she qualified as an employee; that she was paid under the minimum wage (and denied overtime); and that Defendants are also liable to her under several alternative theories. The Court will take these arguments in turn.

A. Timeliness

The statute of limitations for the FLSA is two years, which is extended to three years for "willful" violations. See 29 U.S.C. § 255(a). The DCMWRA and DCWPCL have a statute of limitations of three years. See D.C. Code § 32-1308(c)(1). Plaintiff filed her Complaint on May 31, 2018, and both parties agree that her first period of employment began in early 2015 and ended prior to May of that year — viz., outside the limitations periods even if extended to their furthest ranges. See Pl. MSJ at 29.

Plaintiff first attempts to salvage her DCMWRA claim — she does not press her DCWPCL claim regarding this period, likely given its duplicative nature, and the Court therefore considers it abandoned — by pointing to an exception relating to notice and posting requirements of the law. See Pl. MSJ at 29. The Act provides that employers

> shall keep a copy or summary of this subchapter and any applicable regulation issued under this subchapter, in a form prescribed or approved by the Mayor, posted in a conspicuous and accessible place in or about the premises at which any employee covered by the regulation is employed. If an employer fails to comply with this requirement, the [running of the statute of limitations] shall not begin until the employer posts or provides the required notice.

D.C. Code § 32-1009.

5

The parties have offered conflicting evidence as to whether Defendants satisfied these notice requirements. Plaintiff notes that Kevorkian testified in his deposition that he only posted such notices at the Company's office, which is located inside his home. See Pl. MSJ, Exh. 1 (Deposition of Christopher Kevorkian) at 111:5–112:4. Yet Defendants counter with newly produced evidence that the establishments Plaintiff cleaned during that period — Georgia Brown's and Oceanaire — posted the notices themselves. See, e.g., ECF No. 30 (Def. Reply), Exh. 10 (Affidavit of Ayana Brown, Manager of Georgia Brown's), ¶¶ 4–5. Plaintiff avers, however, that she never saw "any such notices posted[,]" and even if they were, the notices were not in Spanish as required by the relevant regulations. See ECF No. 32 (Pl. Reply), Exh. 7 (Affidavit of Wendy Medina), ¶ 3; see also Dep't of Employment Servs., Acts/Laws Enforced By the Office of Wage Hours, http://does.dc.gov/page/office-wage-hour-involves-administering-wage-laws-district-columbia ("Every employer subject to the provisions of the Act must post the DC Minimum Wage Poster (English) / DC Minimum Wage Poster (Spanish) in or about the premises at which any employee covered is employed.").

It is axiomatic that when considering a motion for summary judgment, a court cannot "make credibility determinations or weigh the evidence." Lopez v. Council on American–Islamic Relations Action Network, Inc., 826 F.3d 492, 496 (D.C. Cir. 2016) (quoting Holcomb, 433 F.3d at 895). Given that "disputes over facts" remain that "might affect the outcome of the suit under the governing law," summary judgment is not warranted on Plaintiff's DCMWRA claim as it pertains to the conduct prior to May 31, 2015. Indep. Settlement Servs., LLC v. Lewis, 296 F. Supp. 3d 194, 196 (D.D.C. 2018) (quoting Liberty Lobby, 477 U.S. at 248).

Although notice and posting does not preclude summary judgment on the FLSA claim, Medina offers another argument: because the FLSA does not automatically toll the statute of

limitations following a failure to post, the Court should exercise its equitable discretion and do so here. See Cruz v. Maypa, 773 F.3d 138, 147 (4th Cir. 2014) (observing that FLSA does not inflict statutory penalties for failure to comply with notice requirements). Equitable tolling is appropriate "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Norman v. United States, 467 F.3d 773, 776 (D.C. Cir. 2006) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). It is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007). To invoke the doctrine, a plaintiff must generally show "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way." Holland v. Florida, 560 U.S. 631, 655 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005), and discussing doctrine in context of habeas petition).

The Court disagrees with Plaintiff that her FLSA claim falls within the narrow band of extraordinary circumstances that merit an equitable tolling. This "rare remedy" would not be appropriate here, particularly given that Plaintiff's DCMWRA claim, which entitles her to identical relief, remains live. See Robinson-Smith v. Gov't Emp. Ins. Co., 424 F. Supp. 2d 117, 121–22 (D.D.C. 2006) (equitable tolling appropriate where "the interests of justice require vindication of the plaintiff's rights") (quoting Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428 (1965); see also Escamilla v. Nuyen, 227 F. Supp. 3d 37, 56–57 (D.D.C. 2017) (declining to toll statute of limitations for FLSA claim despite lack of notices in workplace).

To be sure, "[c]ourts have split on the question, and the D.C. Circuit, it appears, has not determined whether a failure to post entitles a late-filing plaintiff to tolling" on an FLSA claim. Ayala v. Tito Contractors, Inc., 82 F. Supp. 3d 279, 290 (D.D.C. 2015) (citing caselaw). Plaintiff, for example, points to Ayala, where this Court tolled the statute of limitations for an

7

FLSA claim after the plaintiff produced evidence that the employers had failed to post. Id. at 290–91.

Differences between this case and Ayala, however, demonstrate the impropriety of tolling the statute here. The Ayala parties disputed whether the employers had posted notice at all, even in their "main office." Id. at 290. The Court, moreover, did not decide whether a failure to post "alone might be sufficient" to toll. Id. at 291 (emphasis added). Instead, it held that the failure to post, "in the context of the entire exchange between [the] employer and employee," which included "admittedly falsified paystubs, thereby hiding the paper trail of [the defendants'] illegal activity," a failure to inform the plaintiffs "of the company's overtime practices, and threatened retaliation against [p]laintiffs" merited an equitable tolling. Id. (citation omitted). Here, by contrast, Plaintiff does not contest that Defendants posted notice in their office, and she has not produced any evidence of "active misrepresentations" or "a larger scheme of deception," as was present in Ayala. Id. Given these distinctions and that, as mentioned, above, Plaintiff's DCMWRA claim survives, the Court will decline to toll the statute of limitations for her FLSA claim and dismiss it to the extent that it pertains to her work for Defendants prior to May 31, 2015.

B. Employee vs. Independent Contractor

The Court next considers whether Plaintiff's work even qualified for the minimum-wage salary and overtime pay guaranteed by the FLSA, DCWPCL, and DCMWRA. These statutes do not extend their protections to workers who are independent contractors rather than employees, and the three are "construed consistently" for the purpose of assessing the category into which an employee falls. See Perez, 221 F. Supp. 3d at 138.

8

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. §§ 203(e)(1). The Act further defines an "employer" to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee . . . . ," id. § 203(d); and the term "employ" means "to suffer or permit to work." Id. § 203(g); see also D.C. Code § 32-1002 (defining "employ," "employer," and "employee" with language akin to FLSA). Similar to Macbeth's description of the human condition, these definitions have been described in this Circuit and the Supreme Court as "'generally unhelpful,' . . . 'completely circular and explain[ing] nothing.'" Perez, 221 F. Supp. 3d at 140 (quoting Henthorn v. Dep't of Navy, 29 F.3d 682, 684–85 (D.C. Cir. 1994); then quoting Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 444 (2003)).

To determine whether an individual qualifies as an employee, then, the Supreme Court has directed lower courts "to fill the gap in the statutory text" by examining the "economic reality" of the relationship between the putative employee and employer. Id. (quoting Wells, 538 U.S. at 444). The D.C. Circuit has accordingly articulated four factors to guide the classification of a person's employment status under the FLSA: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001) (quoting Henthorn, 29 F.3d at 684). Further complicating matters, the Circuit has also cited with approval five "different, although similar" factors devised by the Second Circuit. Id. "These include: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the

working relationship and (5) the extent to which the work is an integral part of the employer's business." Id. (citing Brock v. Superior Care, 840 F.2d 1054, 1058–59 (D.C. Cir. 1988)). Ultimately, "there is no shorthand formula or magic phrase that can be applied to find the answer, but all the incidents of the relationship must be assessed and weighed with no one factor being decisive." FedEx Home Delivery v. NLRB, 563 F.3d 492, 496 (D.C. Cir. 2009) (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)).

Both parties' invitations to the Court to conduct this delicate assessment of Plaintiff's employment status are premature because there are many material facts in dispute. While the distinction between an employee and an independent contractor is ultimately a legal question, it "is permeated at the fringes by conclusions drawn from the factual setting of the particular . . . dispute." Id. (quoting North Am. Van Lines, Inc. v. NLRB, 869 F.2d 596, 599 (D.C. Cir. 1989)); see also Thompson v. Linda & A., Inc., 779 F. Supp. 2d 139, 147 (D.D.C. 2011) ("The determination of 'employee' status under the FLSA is a question of law[,]" but "depends on subsidiary factual determinations.") (citing Morrison, 253 F.3d at 10). As a result, employee status can be determined by the district court on a motion for summary judgment only "where there are no genuine disputes of material fact." Id.

The parties have offered conflicting pieces of evidence that bear on a variety of the factors relevant to the Court's ultimate legal determination. For example, a genuine dispute exists as to the level of control exerted by Kevorkian over Medina, including his supervision and control over her work schedule. Plaintiff points to Kevorkian's deposition testimony and Negrette's affidavit, which confirm that Kevorkian sometimes communicated with Medina about her schedule and inspected the sites that she was assigned to clean. See Kevorkian Depo. at 183:2–21 (admitting that he notified Plaintiff of schedule change); id. at 24:1–5; 29:1–12

(describing his dictating the window during which Plaintiff and Negrette could clean restaurants); Negrette Aff., ¶ 19 (stating that Kevorkian inspected the locations that he and Plaintiff cleaned). Medina also stated in her deposition that Kevorkian sent her texts and would call her to provide detailed instructions regarding scheduling and other matters. See Medina Depo. at 50:3–20. Defendants dispute Medina's characterizations of her calls with Kevorkian, maintaining that she "lacks credibility" because she has offered allegedly inconsistent deposition testimony. See Def. Reply at 12. They also highlight other aspects of Kevorkian's deposition in which he denied supervisory control over Medina and other workers he characterized as "subcontractor[s]." Kevorkian Depo. at 30:17–19.

The parties' own arguments demonstrate the impropriety of resolving the case at the summary-judgment stage. "Credibility determinations, the weighing of inferences and the drawing of inferences from the facts are jury functions," Escamilla, 200 F. Supp. 3d at 119 (alteration omitted) (emphasis added) (quoting Anderson, 477 U.S. at 250–51), and "a court must deny summary judgment to the extent that reasonable minds could differ over the import of evidence." Id. Because "most of the factors discussed by Plaintiff and Defendant[s] depend on credibility determinations," id., the Court cannot grant either party's Motion for Summary Judgment.

### C. Number of Hours Worked

Defendants next argue that even if Medina qualifies as an "employee," they paid her at the requisite minimum wage, and she did not qualify for overtime pay. During the relevant period, the minimum wage in the District was $10.50/hour and was raised to $11.50/hour in July 2016, while the federal minimum wage remained at $7.25/hour, with any hours in excess of forty/week commanding overtime pay.

11

As a threshold matter, neither party has produced any documents — such as time sheets — attesting to Plaintiff's hours. Bereft of documentary support, the parties have offered competing oral testimony on this issue, transforming it into yet another credibility assessment that the Court cannot perform at this stage. Medina argues that even a conservative estimate of her work would be 49–56 hours/week during her first stint and 63 hours/week during her second stint. See Pl. MSJ at 18–19; Medina Depo. at 22:3–23:20; Compl., ¶ 38. If true, Plaintiff received unlawfully low salaries of $5.36/hour and $9.89/hour, respectively, while also being deprived of the overtime pay guaranteed by the DCMWRA and FLSA during her second stint. Defendants counter that Plaintiff worked only 24.5 hours/week during her first stint and 37 hours/week during her second, which would put her at $12.24/hour and $13.83 dollars/hour, respectively, and would not have qualified her for overtime pay. See Def. Reply at 8–9; Kevorkian Depo. at 32:11–23, 55:9–12, 105:5–12. Additionally, as recounted above, the parties disagree as to the precise duration of these two periods of employment.

There is thus conflicting evidence in the record as to several material facts — namely, the number of hours and weeks that Medina worked — preventing the Court from granting summary judgment to either side on Plaintiff's claims. At the risk of repetition, "[r]esolving disputes as to the hours of work actually performed . . . often 'requires an assessment of credibility, which is beyond the scope of summary judgment.'" Escamilla, 200 F. Supp. 3d at 123 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)); see also Hernandez v. Stringer, 210 F. Supp. 3d 54, 61 (D.D.C. 2016) (court cannot make credibility determinations regarding parties' respective evidence on motion for summary judgment regarding number of hours of work plaintiff actually performed); Guevara v. Ischia, Inc., 47 F. Supp. 3d 23, 28 (D.D.C. 2014) (same).

D.  <u>Alternative Theories of Liability</u>

Finally, the Court denies Plaintiff's Motion for Summary Judgment based on the two alternative theories provided in her briefing: that Defendants are liable either under the FLSA as "joint employers" or under the DCMWRA as "general contractors."

First, Medina asserts that even if she was, in fact, also employed by Negrette — Defendants' alleged contractor — Defendants could be liable to her under a "joint employment" theory because under the FLSA "an employee may be employed by more than one employer." <u>Harris v. Med. Transp. Mgmt., Inc.</u>, 300 F. Supp. 3d 234, 240 (D.D.C. 2018). The question of joint-employer status, like that of employee status, is "essentially a fact issue." <u>Id.</u> at 243 (quoting <u>Boire v. Greyhound Corp.</u>, 376 U.S. 473, 481 (1964)). This claim therefore fails for the reasons described above as it is again contingent on Medina's qualifying as Defendants' employee, a question the Court cannot answer at this juncture.

Second, the DCMWRA provides that "[a] subcontractor, including any intermediate subcontractor, and the general contractor shall be jointly and severally liable to the subcontractor's employees" for violations of the Act. <u>See</u> D.C. Code § 32-1012(c). According to Plaintiff, Defendants qualify as "contractors" because they have contracts with various restaurants to perform cleaning services; Negrette qualifies as a "subcontractor"; and Medina qualifies as Negrette's employee. <u>See</u> <u>Harris</u>, 300 F. Supp. 3d at 247 (defining contractor as someone who "contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work" and subcontractor as "someone who is awarded a portion of an existing contract by a contractor" (alteration omitted) (quoting Black's Law Dictionary (10th ed. 2014))). Plaintiff is free to explore this novel theory

13

going forward, but at this juncture she has provided barely any evidence to substantiate it, and similar factual disputes remain as to whether she qualifies as Negrette's employee.

## IV. Conclusion

For these reasons, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment, and it will deny Plaintiff's Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 17, 2020